# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PATRICK BADER, individually, and
derivatively on behalf of certain
corporate defendants named herein,
v.

EDWARD THILMAN, et al.

Defendants.

Case No. 1:22-cv-05628

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Bader sued his former business partners for claims related to alleged fraudulent conduct prior to and during negotiations around the sale of his interest in the various limited liability corporate entities they formed (the LLCs). Before the Court is the Defendants' motion to dismiss Bader's first amended complaint. [31]. For the reasons stated herein, Defendants' Motion to Dismiss [31] is granted in part and denied in part.

## I. Background

The following factual allegations taken from the operative complaint [13] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Bader joined with defendants Edward Thilman, Douglas Fisher, and Matthew Welke to create Rockwell Partners LLC in 2011. [13] at ¶ 12. The business partners intended Rockwell to be a vehicle for joint real estate investments, and their interests in Rockwell were divided approximately evenly. *Id.* at ¶ 13. After Defendant Jason Fishleder joined Rockwell in 2015, Bader's interest in

1

Rockwell was diluted to 23.75 percent of Rockwell's total interest. *Id.* at ¶ 17. Bader was given the title of "Founding Member" and managed the day-to-day affairs of Rockwell. *Id.* at ¶ 14.

Rockwell raised capital to purchase real estate properties. *Id.* at ¶ 20. The properties were each owned by entities set up by Rockwell called "Limited Partners" ("LPs") which received revenue from the property. *Id.* at ¶ 24. The LPs then set up and paid for additional entities called "General Partners" ("GPs") to perform duties such as property and construction management. *Id.* at ¶ 25. Revenues generated by fees from the GPs were typically distributed pro rata to Rockwell shareholders. *Id.* at ¶ 32.

In February 2021, Defendants sent an email to Bader proposing that he separate from Rockwell and that the individual Defendants purchase his interest in Rockwell at "current market value." *Id.* at ¶¶ 35-38. The email did not contain metrics used to calculate the market value of his interest in Rockwell. *Id.* at ¶ 39. Around this same time, the individual Defendants began minimizing Bader's power within the organization by cancelling meetings Bader was scheduled to attend and by terminating Bader's email access. *Id.* at ¶¶ 41-46.

On March 26, 2021, Bader through his attorney received a resolution prepared and signed by the individual Defendants that suspended Bader's ability to "(i) participate in operational activities of the Company (including but not limited to communications, phone calls, zoom calls and operational meetings), (ii) have unfettered access to operational and management information of the Company, (iii)

utilize Company e-mail services, and (iv) engage in any other activities or exercise any rights or authority with respect to the day-to-day operations of the company." *Id.* The March 26 resolution stated the actions were taken because of Bader's performance issues but did not allege specific misconduct or provide examples of his poor performance. *Id.* at ¶ 49.

On April 2, 2021, Defendants sent a new offer letter to Bader. Defendants offered to buy Bader's interest at a pro rata share of a $3,751,434 valuation of Rockwell Partners. *Id.* at ¶ 53. Bader counteroffered on April 30, 2021: Defendants could buy Bader's interest of Rockwell for $1,050,000 plus a pro rata share of Rockwell's assets or buy out Bader's interests in both Rockwell and the GPs for an additional $5,937,500 payment. *Id.* at ¶¶ 54-58. This offer accused Defendants of denying Bader access to Rockwell financial data and requested that certain documents be made available for Bader to verify the valuation. *Id.* at ¶ 55.

On May 19, 2021, the individual Defendants triggered the "buy/sell" provision of Rockwell's Operating Agreement. *Id.* at ¶ 59. This provision provided that if the shareholders could not reach a "good faith agreement," any member may offer to buy the shares of any other member opposing the offeror. *Id.* at ¶ 60. In response, the offeree may opt to sell his interest of Rockwell *or* purchase the offeror's interest based on the same valuation made by the offeror. *Id.* Bader, the offeree, had 45 days (July 3, 2021) to make a decision. *Id.* Bader never received the financial documents he requested in his April 30 letter and agreed to sell his interest to the defendants on July 7, 2021 per the terms of the May 19 offer. *Id.* at ¶ 65.

3

Concurrently, Bader and the Defendants disputed the ownership of the "RAM" account. *Id.* at ¶ 68. In December 2020 (though Bader's complaint appears to erroneously state December 2021) Defendants began using a previously opened account at Chase Bank as a repository for contributions made by the shareholders of Rockwell from their individual revenues paid by the GPs. *Id.* The shareholders orally agreed to use this account, known as the Rockwell Asset Management or "RAM" Account, to fund future joint real estate ventures. Payments by both Bader and Defendants from these revenue streams were deposited in the RAM account, not in Rockwell's general account, as was the practice for capital contributions by shareholders. *Id.* at ¶¶ 68-70. The RAM Account was not included on Rockwell's January 2021 balance sheet nor on Rockwell's federal tax returns. *Id.* at ¶ 70. However, the RAM Account was included as a Rockwell asset in an amended return filed in January 2022. *Id.* at ¶ 83.

Bader maintained that the RAM account was not an asset of Rockwell and that he retained ownership rights in the May 19 offer. *Id.* at ¶ 73. Individual Defendants asserted the contributions to the RAM were capital contributions and it was Rockwell's business practice to treat them as such. *Id.* at ¶ 77. This dispute was not resolved prior to the execution of Bader's sale of his interest in Rockwell. *Id.* at ¶ 81.

Following Bader's sale, the individual Defendants began to exclude Bader from communications relating to the GPs, though both parties agreed that the GPs were not part of the July 7 sale. Defendants declined to restore Bader's access to the GPs' financial documents that he possessed prior to the February 2021 disputes. *Id.* at ¶

96-104. The individual Defendants also began to divert distributions from the GPs that had historically been paid to shareholders to Rockwell Partners directly. *Id.* at ¶ 112-13. In February 2022, Rockwell and the GPs memorialized this change, establishing Rockwell Partners as a contractor for the GPs and, in exchange, receiving payments directly from the GPs for services rendered. *Id.* at ¶ 115. Bader alleges that this redirection deprived him of thousands of dollars that he would have received under the prior system of direct distributions from the GPs to shareholders. *Id.* at ¶¶ 124-25.

On November 23, 2022, Bader filed a first amended complaint, pleading claims for federal securities fraud (Count I), fraudulent concealment (Counts II and IV), constructive fraud (Count III), direct and derivative breach of fiduciary duty (Counts V, VI, and VII), shareholder/member oppression (Count VIII), and unjust enrichment (Counts IX and X). [13]. Before the Court is the Defendants' motion to dismiss all claims for failure to state a claim under Rule 12(b)(6). [31]. For the reasons that follow, the Court grants the motion in part and denies it in part.

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing

that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Also relevant to many of Bader's counts are the heightened pleading requirements for allegations of fraud. Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The particularity requirement serves "to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp.*

6

*Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Parties accordingly must lay out the "who, what, when, where, and how" of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

## III.    Analysis

### A.  Count I: Securities Fraud

Bader alleges violations of the Securities Exchange Act, 15 U.S.C. § 78, specifically section 10(b) and Rule 10b-5. To succeed on a private claim under Rule 10b-5, a plaintiff must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC. v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

#### i.  The Rockwell Purchase Agreement Gave Bader a Security Interest in the Investment Contract

Defendants argue that Bader fails to establish the threshold requirement that he had a security interest in Rockwell. An investor has a security interest in an investment contract when it involves: "(1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits produced solely by the efforts of others." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) (citing *SEC v. Howey Co.*, 328 U.S. 293, 299 (1946)). The third prong focuses on whether the plaintiff himself made decisions on investment actions that he expected to profit from. *See id.*; *Kim v. Cochenour*, 687 F.2d 210, 213 n.7 (7th Cir. 1982) (examining "whether the efforts made by those other than the investor are the . . . essential managerial efforts

which affect the failure or success of the enterprise."). Courts have "eschewed a rigid interpretation" of the word "solely" in the test, looking instead at the "economic realities of the transaction," *Santore v. Swaminathan*, 17-CV5742, 2018 WL 1124414 (N.D. Ill., Mar. 1, 2018) (internal citations omitted), and the specific facts and circumstances of a given case. *Shirley v. JED Cap., LLC*, 724 F. Supp. 2d 904, 910 (N.D. Ill. 2010). In *Shirley*, for example, the court determined an LLC member with a 20 percent ownership stake had a security interest in an investment contract because he did not exercise true managerial control over the company. *Id.* at 911. As for the time period of the analysis, courts assess the investor's "expectations of control . . . at the time the interest is sold." *Swaminathan*, 2018 WL 1124414, at *3.

Here, Bader argues that he did not exercise control over Rockwell because he was a minority-shareholder and thus subject to decisions made by a majority vote of partners. [39] at 11. The Court disagrees. A majority-rule provision in business decisions does not grant every LLC member a security interest for their inability to act unilaterally. Also, Bader admits in his complaint that he formed Rockwell with individual Defendants to consolidate the real estate holdings they already owned and operated, [13] at ¶ 12, and that he managed the day-to-day affairs of Rockwell before he sold his interest. *Id.* at ¶ 14. These facts weigh against finding a security interest in the investment contract.

There is, however, the issue of timing. Bader alleges that when he sold his stake in Rockwell, he did not have access to financial information that he otherwise would have if he had continued exercising managerial control at Rockwell. [13] at ¶¶

8

104-05. Taking these allegations as true and in the light most favorable to Bader, Bader was placed on a different level of access and control than his co-owners at the time of sale. "One of the principal purposes underlying the federal securities laws is to protect investors by promoting full disclosure of information necessary to informed investment decisions." *Cogniplex, Inc. v. Ross*, 00-C-7463, 2001 WL 436210, at *9 (N.D. Ill. Apr. 27, 2001) (quoting *Bailey v. J.W.K. Properties, Inc.*, 904 F.2d 918, 921 (4th Cir.1990)) (cleaned up). Bader plausibly alleges that he did not have "meaningful control" over the investment activity at issue in Count I. *McKinney v. Panico*, 21-CV-04602, 2022 WL 4551695, at *10 (N.D. Ill, Sept. 29, 2022) As courts should read federal securities laws broadly, *e.g., Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967), Bader's investment contract plausibly qualifies as a security interest.

### ii. Bader Pleads an Actionable Misrepresentation and/or Omission with Particularity

Defendants next argue that Bader does not plead with heightened particularity that Defendants made a material misrepresentation or omission. Defendants contend that Bader does not specify which individual Defendant made the misrepresentation, that the misstatements alleged are in fact true, and that Bader does not explain how any omissions misled him. [32] at 16-18.

In every count, Bader engages in group pleading, attributing all alleged misconduct to each individual Defendant. [32] at 14. The Seventh Circuit's general interpretation of the group pleading rule requires plaintiffs to specify the role of each defendant in purported fraud. *Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 477 (N.D. Ill 2001). However, courts in this Circuit have also held that it is sufficient

at the pleading stage for a plaintiff to allege facts that "put the defendants on notice of the claims against them without having to individualize every allegation," especially if a plaintiff cannot attribute misconduct more specifically without engaging in discovery. *E.g., Reshal Associates, Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1231 (N.D. Ill. 1990); *Everett v. Wexford Health Sources, Inc*, 20-CV-02465, 2023 U.S. Dist. LEXIS 56432 at *7-*8 (March 31, 2023). Here, Bader's complaint clearly intends to direct each allegation towards each defendant, and he emphasizes that he lacks information to individualize each allegation because of Defendants' actions to deny him access. [13] at ¶¶ 146 - 64; [39] at 20. He also alleges that the Rockwell purchase agreement itself, signed by each Defendant, terminated his access to portions of financial records. *Id.* At this stage, these allegations are sufficiently particularized to give Defendants notice of the claims against them.

As for whether the misstatements alleged by Bader are factually true, the Court agrees with Bader that it is not appropriate for the Court to decide the truth of the statements at the motion to dismiss stage. After all, "[e]ven statements that are literally true can still be actionable under § 10(b) as misleading if they are susceptible to another interpretation by a reasonable investor." *Macovski v. Groupon, Inc.* (quoting *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F.Supp.3d 633, 651 (N.D. Ill. 2015). Bader pleads two distinct affirmative statements by Defendants amounted to misstatements and/or omissions: 1) the Rockwell Transaction only related to Bader's interest in Rockwell and 2) the transaction would not affect his stake in GP distributions. Reading the complaint in

10

the light most favorable to Bader, the Court views these statements as concealing Defendants' intention to reallocate expenses to the GPs and thereby reduce Bader's proceeds from the GP. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989) (finding a "half-truth" is actionable when it leads to an "incomplete disclosure"). In the same vein, these misstatements are led to plausibly linked to Badar's ignorance about the detrimental effects of the transaction.

Finally, Bader pleads enough factual allegations to reasonably infer the misstatements and/or omissions plausibly caused him economic harm. As discussed in further detail in Count II, Bader alleges that had he known about Defendants' plans to cut his GP distributions, he would have either sold his interest in Rockwell at a true, higher valuation or else bought Defendants' interest at the "artificially low" valuation they offered. Instead, Bader sold his share for the lower price *and* suffered from reduced GP proceeds. The Court finds these allegations sufficient at this stage. For the foregoing reasons, the Court denies Defendants' motion to dismiss Count I.

### B. Count II: Fraudulent Concealment

In Count II, Bader claims that Defendants fraudulently concealed the true valuation of his Rockwell interest by hiding their plans to change cashflows from the GPs. Defendants argue that Bader has failed to sufficiently plead any elements of a fraudulent concealment claim.

To state a claim for common law fraudulent concealment, a plaintiff must allege the following: "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3)

the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Bauer v. Giannis*, 834 N.E.2d 952, 957 (Ill. App. Ct. 2005). Rule 9(b)'s particularity requirements apply to fraudulent concealment claims. *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (internal citations omitted); *see Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019).

For the same reasons as in Count I, the Court finds the group pleading adequate to allege that each individual Defendant concealed material information. Next, Defendants argue that Bader made insufficient allegations establishing scienter. [32] at 15. They maintain that Bader does not plead enough facts establishing Defendants' intent to defraud him, rather than making a prudent business decision to divert the revenue flows of the GPs. *Id.* Rule 9(b) provides that intent may be alleged generally in a complaint, Fed. R. Civ. P. 9(b), as long as it has some factual support. *Reshal*, 754 F. Supp. at 1235-36 ("[W]here the defendants themselves are alleged to have made false representations directly to plaintiffs, and where a motive for doing so is apparent from the face of the complaint, there is a sufficient factual basis in the complaint for a general allegation of scienter."); *Handler v. Moore*, 620 B.R. 617, 635 (Bankr. N.D. Ill. 2020).

Here, Bader makes factual allegations from which intent can be inferred: he was denied the necessary documents to make an accurate valuation of Rockwell, his offer to sell his interest in Rockwell and the GPs for a higher value was rejected, and he was told his share of GP distributions would not be affected. [13] at ¶¶ 59, 64, 97, 146-47. Large transfers between the GPs and Rockwell began shortly after his sale. *Id.* Bader also includes an allegation, albeit conclusory, that these actions were taken to induce his sale at a lower value than he was owed. *Id.* at ¶ 148. These allegations plausibly suggest Defendants had fraudulent intent.

Defendants also argue that Bader does not plead sufficient facts to suggest that he could not have discovered the alleged concealment through reasonable inquiry. [32] at 15. In response, Bader refers to allegations in his complaint that he could not have reasonably discovered the omission, and that Defendants reassured Bader that any future distributions from the GPs would continue to be paid to their members. [39] at 20. Bader also alleges that he was denied access to documents, emails, and meetings by Defendants. [13] at ¶ 41, 55. Bader supplies factual details of Defendants' concealment: according to him, they "repeatedly represented" that his "ownership value" in the GPs would not be affected by the sale, *id.* at ¶ 129, both in the May 19 Offer and written correspondence sent on June 22, 2021. Considering these assurances, which were responses to Bader's own questions about the GPs during negotiations, he should not have had to anticipate significant changes to the expenses allocated to the GPs. Bader plausibly alleges that he was reasonably diligent in seeking out information about GP distributions.

13

As for whether Bader establishes that he would have acted differently had he known the concealed information, Defendants again argue that Bader had no meaningful choice to sell his interest at a difference price. [32] at 15. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) (requiring plaintiff to plead that he would have altered his behavior if aware of the alleged concealment). Bader responds that he "has been injured by selling his ownership interest in Rockwell Partners for an artificially lowered price or missing out on his opportunity to purchase the Individual Defendants' ownership interests in Rockwell Partners," [39] at 18 (quoting [13] at ¶ 139).

Bader's allegations, taken as true, are sufficient at the pleading stage. Defendants are correct that Bader does not explicitly allege that the concealment was the proximate cause of his harm. However, the Court can draw reasonable inferences from factual allegations. Here, the Operating Agreement's buy/sell provision allowed Bader to sell his interest in Rockwell at the valuation made by the offerors or to purchase their interest *at the same valuation*. [13] at ¶ 60 (emphasis added). Supplied with comprehensive information about the GPs, Bader would have had the choice of either selling his interest at an artificially low value or purchasing Defendants' interest at an artificially low value. At this stage, it is a reasonable inference that he would have made a different decision with full knowledge. More to the point, Defendants simultaneously admit that the buy/sell price could not be altered after the offer. [32] at 16. The Court can reasonably infer that, had Bader known of

Defendants' plans, he would have either been able to sell his interest at a higher, true valuation or else purchased Defendants' interest at the low valuation they offered.

Thus, Bader sufficiently pleads the elements of a common law fraudulent concealment claim with respect to the change in GP cashflows. Defendants' motion to dismiss Count II is denied.

### C. Count III: Constructive Fraud

In Count III, Bader alleges that, in the alternative, Defendants engaged in constructive fraud. Unlike actual fraud, constructive fraud does not have an intent requirement. *Kohler v. Leslie Hindman, Inc.*, 1994 U.S. Dist. LEXIS 6732 at *16 (N.D. Ill. May 19, 1994). A plaintiff must establish that (1) defendants owed him a fiduciary duty, (2) the duty was breached, and (3) the breach was the proximate cause of harm to the plaintiff. *Id.* Because the count relates to fraud, Rule 9(b) applies, and Bader must plead its elements with heightened particularity. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997).

First, Bader alleges enough facts to establish that Defendants owed a fiduciary duty to him as a minority shareholder in Rockwell and the GPs, at least to the extent that they acted in tandem. [13] at ¶ 160. Illinois law extends the fiduciary duty owed to minority shareholders by a single controlling shareholder to a group of shareholders that constitutes a majority. *Cafcas v. De Haan & Richter, P.C.*, 699 F.Supp 679, 683 (N.D. Ill. 1988). Bader further argues that the general fiduciary duty included a duty to advise him of their plans prior to the sale of his interest, and that Defendants breached by not disclosing the plans prior to the sale. [13] at ¶ 160-61.

Defendants argue that these allegations do not amount to the "who, what, where, when, and how" of a fiduciary breach, and that the transfers were strategic decisions. [32] at 17.

As before, this Court draws reasonable inferences in favor of the plaintiff at the motion to dismiss stage. Here, Bader alleges several times that transfers totaling hundreds of thousands of dollars from the GPs to Rockwell began in the months after the sale of his interest. [13] at ¶ 113, 133, 147, 164. He also includes that he offered to sell his interest in the GP, but Defendants declined. *Id.* at ¶ 58-59. These transfers benefitted Rockwell at the expense of the GPs, and, as a direct result of the sale, increased the value of the defendants' now larger pro rata interests in Rockwell at the expense of the GPs in which Bader was still invested. *Id.* at ¶ 128, 163. Cases of fraud may be secretive by nature, so courts extend some latitude to plaintiffs in pleading so long as the nature and course of the fraud is outlined. *Corely v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *see Everett,* No. 1:20-CV-02465, 2023 U.S. Dist. LEXIS 56432, at *7-*8. Based on Bader's allegations, the Court can reasonably infer that Defendants acted in self-interest by omitting their plans to redirect revenues from the GPs to Rockwell, thus disregarding their fiduciary duty to Bader. Bader pleads enough to establish breach at this stage.

Finally, for the same reasons as in Counts I and II, Bader sufficiently pleads damages. He alleges that Defendants' breach of fiduciary duty was the proximate cause of his harm by depriving him of the ability to make an informed decision

regarding the value of his assets. [13] at ¶ 165. For these reasons, Defendants' motion to dismiss Count III is denied.

### D. Count IV: Fraudulent Concealment - RAM Account

Bader pleads a claim for fraudulent concealment with respect to the ownership of the RAM account. The Court recited the elements of a fraudulent concealment claim in addressing Count II.

Bader alleges that when Defendants forced his departure from Rockwell, they had already formulated a plot to deny him access to the RAM account. [13] at ¶ 170. He alleges that Defendants concealed that the RAM account was a Rockwell asset, *id.* at ¶ 171, and therefore the subsequent buy-out of his interest in Rockwell ultimately deprived him of $250,000 he invested in the RAM account. *Id.* at ¶ 173, 176.

Bader's characterization of the RAM account is inconsistent throughout his complaint. In Count IV, he alleges the money he invested in the RAM account was available for both his personal use *and* for a joint investment opportunity with the Defendants. *Id.* at ¶ 172. Yet elsewhere in his complaint, he alleges that there was no capital call nor agreement to contribute capital to Rockwell, *id.* at ¶ 70, even though the purpose behind Rockwell Partners was to invest directly in real estate. *Id.* at ¶ 10-11. He later describes the RAM account as a "repository for money [he] and the Individual Defendants agreed to set aside for future joint investments…." *Id.* at ¶ 68. In failing to consistently describe the RAM account, he does not outline the

17

basic scheme of the purported fraud. *See Corely*, 142 F.3d at 1051. This is insufficient to meet the heightened standard of Rule 9(b).

Even if Bader had successfully stated a basis for fraudulent concealment, he does not allege fraudulent intent to deceive him. Nowhere does he allege that Defendants agreed to conceal information relating to the RAM account. In fact, when Bader's counsel asked about the RAM account, Defendants replied that they believed the RAM account to be an asset of Rockwell. [13] at ¶ 75. The account was titled the *Rockwell* Asset Management account. *Id.* at ¶ 68 (emphasis added). Even construing the complaint in the light most favorable to Bader, it is implausible to suggest that he was unaware of how Defendants viewed the account. Nor does he allege that he was prevented from making reasonable inquiries about the concealed information. Thus, Bader fails to properly plead the elements of fraudulent concealment with regards to the RAM account. Defendants' motion to dismiss Count IV is granted.

### E. Count V: Breach of Fiduciary Duty - RAM Account

In Count V, Bader accuses Defendants of breaching their fiduciary duty by concealing the status of the RAM account. [13] at ¶ 177; [39] at 23-24. A claim for breach of fiduciary duty requires plaintiff to show that a fiduciary relationship existed between the parties, that defendant breached the duty, and that the breach proximately caused the injury of which the plaintiff complains." *800 South Wells Com. LLC v. Cadden*, 103 N.E.3d 875, 893 (Ill. App. Ct. 2018).

Here, Defendants each owed Bader a fiduciary duty as a minority shareholder insofar as they operated as a majority bloc. *Cafcas*, 699 F.Supp at 683. What Bader

still does not plausible allege, though, is that Defendants breached their fiduciary duty where Bader himself is unclear about the status of the RAM account. For the same reasons as in Count IV, Bader's characterization of the RAM account is too inconsistent to plausibly allege that he was misled by Defendants' actions or that they concealed the true nature of this account from him. Defendants' motion to dismiss Count V is granted.

### F. Count VI: Derivative Claim for Breach of Fiduciary Duty on Behalf of GPs

Count VI contains a claim a derivative breach of fiduciary duty on behalf of GPs that Bader retained an interest in, including Camelback Manager, Chicago Partners, Naperville Manager, MC Manager, Tatum Manager, and Stonegate Manager.[1] When a corporation is injured, the resulting cause of action accrues to the corporation, not individual shareholders. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 646 (7th Cir. 2006). Bader must therefore show that the elements of fraud—existence of a fiduciary duty, breach of the duty, and injury—apply to the named GPs. *Id.* Defendants do not dispute that they owed the GPs a fiduciary duty. They contend, though, that Bader does not allege sufficient facts to establish breach or that there was damage to the GPs. [32] at 22.

---

[1] Defendants assert that Bader has not complied with the requirements of Rule 23.1 by failing to make a demand on the Rockwell defendants. The Court agrees with Bader that such a demand can be excused as futile. "The doctrine of futility excuses demand where a majority of the directors are the alleged wrongdoers." *Shirley v. JED Cap.*, LLC, 724 F. Supp.2d 904, 916 (N.D. Ill. 2010) (citing *In re Abbott Labs. Derivative S'holding Litig.*, 325 F.3d 795 (7th Cir. 2003). A plaintiff establishes demand futility by alleging "facts that raise a reasonable doubt as to (1) the directors' disinterestedness or independence or (2) whether the challenged transaction was the product of a valid business judgment." Here, Bader has alleged facts showing both scenarios. The demand requirement is thus excused.

Bader alleges that transfers of hundreds of thousands of dollars were made from the GPs following his removal from Rockwell. [13] at ¶¶ 113, 120. He alleges that the Defendants' decision to alter the relationship between Rockwell and the GPs enriched Defendants at the expense of the value of the GPs. *Id.* at ¶¶ 112, 122. Defendants respond that in diverting funds from the GPs, they considered multiple strategies and acted to recoup the cost of asset management services. [32] at 22. The Court finds that Bader has pled facts surpassing a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The circumstances surrounding Defendants' change in business strategy—Bader's exclusion from Rockwell, the controversy over the value of his interest, and the decision to alter the business model shortly afterwards, requiring profits to be split fewer ways—all make a breach of fiduciary duty plausible.

Defendants also argue that there is no plausible injury because Bader ignored the costs associated with generating revenue for the GPs. [32] at 22. Bader disputes whether these expenses were a valid basis for moving funds to Rockwell. [13] at ¶ 183; [39] at 24-25, noting that the main purpose of the GPs was to manage assets for the LPs. [13] at ¶ 25. It is not appropriate for the Court to decide between these competing facts at the motion to dismiss stage. Drawing all reasonable inferences in Bader's favor, it is plausible that Defendants' decision to migrate the purpose of the GPs to Rockwell deprived the GPs of revenue. This is a cognizable injury to the GPs, and Bader as a minority owner by extension. Defendants' motion to dismiss Count VI is therefore denied.

### G. Count VII - Direct Breach of Fiduciary Duty on Behalf of GPs

Bader next pleads that Defendants directly breached a fiduciary duty owed to him as a minority shareholder in the GPs. Unlike Count III for constructive fraud, this claim pertains only to Bader's ownership interest in the GPs, not the sale of his interest in Rockwell Partners. He claims that Defendants took steps to reduce the value of his investment in the GPs and deny him access to relevant financial information. [13] at ¶ 190. Defendants respond that Rockwell must be dismissed as a party because Bader was not owed a fiduciary duty by Rockwell Partners and that the claim against the individual Defendants must be dismissed due to the shareholder standing rule. [32] at 23.

To succeed on a claim for breach of fiduciary duty, Bader must allege facts showing that a "fiduciary relationship existed between the parties, that the defendant breached the duty, and that the breach proximately caused the injury of which the plaintiff complains." *800 South Wells* 103 N.E.3d at 893. The shareholder standing rule states that an individual shareholder may not sue for an indirect harm caused by an injury to a corporation. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2007). Illinois courts do not use a uniform approach to the shareholder standing rule. *See Halperin v. Halperin*, No. 10 CV 4104, 2012 U.S. Dist. LEXIS 32949 (N.D. Ill. March 8, 2012) (collecting cases). For example, in *Mann v. Kemper Fin. Cos.,* a case cited by Bader, plaintiffs did not need to show a unique injury to establish a breach of fiduciary duty, only that that the breached duty was directly owed to him and not exclusively to the corporate entity. 618 N.E.2d 317, 327 (Ill. App. Ct. 1992).

The shareholder standing rule is a prudential rule. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2012). This Court will thus analyze Bader's standing using the theory of injury laid out in *Mann*.

In a corporation, the owners owe a fiduciary duty "to deal fairly, honestly, and openly" with each other. *Zokoych v. Spalding*, 344 N.E.2d 805, 819 (Ill. App. Ct. 1976); *see also Cafcas*, 699 F.Supp at 683. Contrary to this general duty, Bader alleges that the individual defendants intentionally excluded him from managing the affairs of the company and denied him access to financial information. [13] at ¶ 190. He claims he was injured by the loss of future distributions and profits and the reduced value of his ownership interest in the GPs. *Id.* As discussed previously, *supra* Count II, Bader was neither guaranteed nor promised distributions from the GPs. However, the allegation that redirecting revenues from the GPs hurt his own interest in the GPs is a specific harm. For that reason, Bader has plausibly stated a claim that he was owed a fiduciary duty directly, that it was breached, and that he was harmed as a result. The motion to dismiss Count VII is denied.

### H. Count VIII: Shareholder Oppression

Bader contends that the Illinois Limited Liability Act entitles him to the full value of his interest in Rockwell, or some other judicial remedy, for Defendants' fraudulent conduct. Defendants argue that the Court should dismiss this claim because Bader fails to name the correct defendant and fails to state a claim.

The Illinois Limited Liability Act grants a cause of action to "members or transferees of a distributional interest [in an LLC]" harmed by controlling LLC

members who acted "in a manner that is illegal or fraudulent," or "in a manner that is oppressive and was, is, or will be directly harmful to the applicant." 805 ILCS 180/35-1(a)(5).

By incorporating his previous allegations of fraud, Bader pleads enough facts to allege that Defendants acted in a fraudulent or oppressive manner. *See Vanco v. Mancini*, 495 F.Supp.3d 712, 721 (N.D. Ill. 2020) (Defining oppression as "arbitrary, overbearing, and heavy-handed course of conduct"). The Court need not reach this question, though. Plaintiffs may not file suit under Section 35-1(b) "against parties other than the LLC from whom the distributional interest is sought." *FW Assoc. LLC v. WM Assoc. LLC*, 2019 WL 354953, at *3 (Jan. 28, 2019). Here, Bader names individual Defendants and GP managers as parties to Count VIII, not Rockwell itself. Bader acknowledge this mistake in his response to Defendants' motion to dismiss and accordingly seeks leave to amend the complaint. [39] at 27, 30. The Court will not grant leave to amend based on an argument in a footnote.[2] Defendants' motion to dismiss Count VII is granted.

## I. Counts IX and X: Unjust Enrichment (direct and derivative)

Bader brings two counts of unjust enrichment against individual Defendants for their decision to redirect cash flows from the GPs to Rockwell: Count IX alleges direct harm to himself, while Count X is on behalf of the GPs he has an interest in. To state a claim for unjust enrichment under Illinois law, a "plaintiff must allege that

---

[2] Bader similarly addresses Defendants' argument that Stonegate II should be dismissed because Bader does not own an interest in it. In a footnote, blaming "Scrivener's Error" [39] at 1, Bader requests leave to dismiss "Stonegate II Manager LLC" and add "Stonegate Manager GH LLC." *Id.* The Court denies leave to amend without a proper motion.

the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (cleaned up).

Defendants move to dismiss Bader's direct claim fails for lack of shareholder standing. For the reasons laid out in the Court's analysis of Count VII, Bader pleads enough to circumvent the shareholder standing rule.

Next, Defendants argue that Bader does not establish the elements for both direct and derivative unjust enrichment. Bader alleges facts sufficient to plausibly suggest that Defendants retained a benefit by diverting distributions from the GPs. Defendants each maintained their interests in Rockwell Partners, so any distributions redirected to Rockwell gave them a financial advantage. [13] at ¶ 199-200. Bader also alleges that Defendants took these actions not due to any business strategy, but rather to further devalue his financial interests. *Id.* at 206-07 210-11. These personally motivated decisions would offend principles of justice, equity, and good faith. *Id.* Bader has adequately pled the elements of an unjust enrichment claim.

Finally, Defendants contend that both the direct and derivative claims are duplicative of other counts. In Illinois, however, "unjust enrichment is a [distinct] legal claim." *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 923 (N.D. Ill. 2013); *Cleary*, 656 F.3d at 516. When unjust enrichment rests on the "same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and . . . will stand or fall with the related claim." *Id.* at 517. Here,

Bader's unjust enrichment claims rest on Defendants' allocation of asset management expenses, the same conduct at issue in Counts VI and VII for breach of fiduciary duty. The Court found that those counts were adequately pled. Thus, the same conduct may form the basis of Counts IX and X, and Defendants' motion to dismiss both counts is denied.

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [31] is granted in part and denied in part. Counts IV, V, and VIII are dismissed.

E N T E R:

Dated: December 6, 2023

_____
MARY M. ROWLAND
United States District Judge